## ARTHUR M. BIBB ᴇᴛ ᴜx *v.* STATE TAX COMMISSION

Kenneth M. Abraham, Hood River, Oregon, represented plaintiff.

Donald C. Seymour, Assistant Attorney General, Salem, Oregon, represented defendant.

Decision for defendant rendered June 23, 1967.

EDWARD H. HOWELL, Judge.

Plaintiffs appeal from an income tax deficiency assessment for the tax year 1965.

In 1963 plaintiffs, cash basis taxpayers, sold their orchard in Hood River County for $97,000, receiving a $27,000 down payment with the $70,000 balance secured by a land sale contract providing for installment payments of $7,000 per year plus five percent interest. The contract contained a provision allowing the buyer to skip the principal payments for two years and pay the interest only, with the deferred principal payments to be added to the life of the contract.

■ The plaintiffs did not elect to report the sale on the installment basis (ORS 316.190) but reported the sale using the cost recovery method which allows the basis in the property to be recovered before reporting any profit. The tax commission disallowed this method of reporting the sale and the plaintiffs appealed.

■ ORS 316.105 requires the inclusion in gross income of any gain derived from the sale of real and personal property. ORS 316.260(1) defines the gain from the sale of property as the excess of the amount realized from the sale over the adjusted basis of the property. ORS 316.260(2) defines the amount realized as "the sum of any money received *plus the fair market value of the property (other than money) received.*" (Emphasis supplied.)

The tax commission's regulation concerning fair market value states, in part:

"Reg. 316.260-(B). Fair Market Value Defined.

The fair market value of any particular property (at effective date of the law, or at any other date) is the price at which a willing buyer and a willing seller would have agreed to trade the property at the time if both parties were informed of the circumstances and neither was compelled to buy or sell. However, to have a fair market value it is not necessary that the property be for sale or that there be a known buyer; *and only in rare and extraordinary circumstances will property be considered to have no fair market value.* The determination of fair market value depends upon the facts of each case. * * *" (Emphasis supplied.)

■ The courts have generally taken the position that the transaction is complete in the year of sale and the seller has in effect traded his property for the obligation of the purchaser. O'Byrne, *Farm Income Tax Manual* 209 (3rd ed 1964).

The plaintiffs, however, rely upon the rule first enunciated in 1931 in *Burnet v. Logan,* 283 US 404, 51 S Ct 550, 75 L ed 1143 (1931), that when a purchaser's obligation received as part of the consideration on a sale has no ascertainable market value the seller may treat the full amount of the payments as they are received as a return of capital and report as income only those payments that are received after his entire basis has been recovered. See also *Riss v. Commissioner of Internal Revenue,* 368 F2d 965 (10th Cir 1966), 18 AFTR2d 6021, 66-2 USTC ¶ 9754.

"The rule [of *Burnet v. Logan, supra*] is applied in such situations because of the uncertainty at the time of the sale that any profit will actually be realized; and the application of the rule depends primarily on the degree of uncertainty of the ultimate realization of profit. * * *" 1, Mertens, *Law of Federal*

*Income Taxation,* § 5.08. (See also, 2, Mertens, *supra,* § 11.05, p 10, *et seq.*)

■ If the contract has an ascertainable market value the transaction is considered complete and the total gain is recognizable in the year of the sale even though not all of the payments have been received. O'Byrne, *supra,* 209; 1, Mertens, *supra,* § 5.08.

The Commissioner of Internal Revenue, like the State Tax Commission, has taken the position that only in rare and extraordinary cases[1] does property have no fair market value. Reg 1.453-6(a) (2) and Reg 118 39.44-4(c).

Professor O'Byrne in his work on Farm Income Taxation gives as an example of a farm sale contract with no ascertainable market value one in which the annual payments are based upon a percentage of the harvested crops. Because the payments are tied to production and the life of the contract depends on the quality of the crops and the weather, the contract would be so speculative as to have no ascertainable market value.

■ Whether a land contract has a fair market value is a question of fact to be decided after a consideration of all the attendant circumstances. *Riss v. Commissioner, supra,* and cases cited therein; *Joan E. Heller Trust v. Commissioner,* 24 TCM 1663 (1965).

---

[1] Mertens gives the following examples of contracts with no ascertainable market value:

"* * * to payments made in the form of a percentage of corporate profits, to awards of the Mixed Claims Commission; to exchanges of oil well equipment for oil payment contracts; to transfers of property in exchange for private agreements to make annuity payments; brokerage commission contracts; the right to a portion of the net income received by third persons for the performance of certain contracts; and a construction contract received as a liquidating dividend from a corporation." 1, Mertens, *supra,* § 5.08, p 22.

Factors to be considered in determining the question of whether a contract has an ascertainable market value are: the solvency of the purchaser, if the obligation to pay is unconditional and assignable, whether set-offs are involved, whether the contract is of a kind frequently transferred to lenders or investors at an average discount, the nature and sufficiency of the security, whether title is retained by the seller, the existence of a market for the purchase or sale of land contracts, the value of the property securing the contract, the credit standing of the purchaser, the amount paid on the contract at the date of the valuation of the contract and the reasonableness of the purchase price. *Frank Cowden, Sr. v. Commissioner,* 32 TC 853 (1959); *reversed* 289 F2d 20 (5th Cir 1961), 61-1 USTC ¶ 9382, 7 AFTR2d 1160; *Darby Investment Corporation v. Commissioner,* 37 TC 839 (1962); *affirmed* 315 F2d 551 (6th Cir 1963), 63-1 USTC ¶ 9396, 11 AFTR2d 1242; *Wingate E. Underhill v. Commissioner,* 45 TC 489 (1966); *Joan E. Heller Trust, supra, Herbert Kaufman v. Commissioner,* 23 TCM 747 (1964); *Phipps Industrial Land Trust Co. v. Commissioner,* 22 TCM 1724 (1963).

■ Applying the above tests to the facts in the instant case it is clear that the contract had an ascertainable fair market value. There was evidence that the purchaser was an experienced orchardist; the price of $97,000 was reasonable for the property involved; the down payment of $27,000 was substantial; the purchaser was financially secure; the obligation to pay was unconditional and not based upon the amount of the crop; the sellers retained legal title to the property sold. It is true that the plaintiffs' witnesses testified that they did not know of any ready market for the sale of orchard contracts in the Hood River area at

a price representing the remaining balance of the contract. There was no showing, however, that there was no ready market available for the purchase of such contracts in the area adjacent to Hood River. The plaintiffs' witnesses also stated they could not assign a definite price as the fair market value of the contract, but they admitted that the contract did have a value even though they could not set an exact price as the fair market value. In *Kaufman v. Commissioner, supra,* under similar circumstances the evidence showed some value, but without a definite value, and the court found such evidence to be sufficient for the court to determine the value. See also, *Wingate E. Underhill v. Commissioner, supra,* 45 TC at 494. The same rule should apply in this case.

The tax commission, believing that the five percent interest on the balance of the contract justified some discount from the $70,000 remaining balance, found the fair market value of the contract to be $49,000. Considering all the factors mentioned above this discount of $21,000 seems more than reasonable. The fair market value of the plaintiffs' contract is determined to be $49,000.

The order of the tax commission is affirmed.